## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

EDGAR YOVANY ROJOP SOSA,

    Petitioner,

    v.                                      No. 1:26-cv-01167-SMD-GJF

MARY DE ANDA-YBARRA, *et al.*,

    Respondents.

### ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on Petitioner's Petition for Writ of Habeas Corpus (Doc. 1). The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons set forth below, the Petition is **GRANTED**.

### BACKGROUND

Petitioner Edgar Yovany Rojop Sosa, a citizen of Guatemala, entered the United States without inspection on November 21, 2017 as an unaccompanied minor. Doc. 6 at 2. Petitioner's removal proceedings were administratively closed on February 9, 2022. *Id.* Respondents emphasize that Petitioner failed to file the I-589 Application for Asylum until six years after his entry into the United States. *Id.*

On August 16, 2025, Florida Highway Patrol stopped Petitioner for a traffic violation and subsequently transferred him to the custody of the Department of Homeland Security ("DHS"). *Id.* DHS issued a Notice to Appear, charging Petitioner as removable under Sections 212 (a)(6)(a)(i) and 212 (a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). *Id.* at 2–3. Petitioner's Form I-213 indicates no prior criminal history. *See* Doc. 6-3 at 2. At present, Petitioner's asylum application is still pending. Doc. 6 at 3.

Petitioner seeks immediate release, asserting that his prolonged detention violates, inter alia, the Fifth Amendment's Due Process Clause.  Doc. 1 at 9.

## DISCUSSION

This Court has jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  A district court may grant a writ of habeas corpus to a petitioner who demonstrates that "[h]e is in custody in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2241(c)(3).

I.      Statutory Framework: 8 U.S.C §§ 1225 and 1226

Sections 1225 and 1226 govern the detention of noncitizens prior to a final order of removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 287–89 (2018).  Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States"—i.e., "applicants for admission." *Id*. at 297.  Detention pursuant to § 1225(b)(2)(A) is required "if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted."  Noncitizens detained pursuant to § 1225(b)(2) cannot be released on bond.

Section 1226(a) sets the "default rule" for detaining noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303.  Under § 1226(a), a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." Noncitizens detained pursuant to § 1226(a) are therefore generally entitled to individualized bond hearings. *See id.* at 306.

Sections 1225(b)(2)(A) and 1226(a) are mutually exclusive in that both provisions cannot simultaneously govern Petitioner's detention. *E.g.*, *Romero v. Hyde*, 795 F. Supp. 3d 271, 286 (D. Mass. 2025); *see also, Patel v. Crowley*, No. 25-cv-11180, 2025 WL 2996787, at *5 (N.D. Ill. Oct. 24, 2025); *Artiga v. Genalo*, No. 25-cv-5208, 2025 WL 2829434, at *4 (E.D.N.Y. Oct. 5, 2025).

Section 1226(a), rather than § 1225(b)(2), governs Petitioner's detention because he was "already present in the United States" at the time of his arrest. *Jennings*, 583 U.S. at 303. Petitioner was detained in the U.S. interior and is therefore not subject to the mandatory detention provisions of § 1225, which apply to those seeking admission, specifically noncitizens who present at a port of entry or are apprehended immediately after entering. *See* Doc. 6 at 2. *See Aragon v. Noem*, No. 2:26-CV-00065, 2026 WL 458449, at *2 (D.N.M. Feb. 18, 2026); *Cortez-Gonzalez v. Noem*, ___ F. Supp. 3d ___, 2025 WL 3485771, at *3 (D.N.M. Dec. 4, 2025); *Velasquez Salazar v. Dedos*, No. 1:25-cv-00835-DHU-JMR, 2025 WL 2676729, at *4 (D.N.M. Sept. 17, 2025); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-01031-KG-JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025); *see also Figuera v. Ripa*, No. 26-CV-20307-JB, 2026 WL 467569, at *5 (S.D. Fla. Feb. 19, 2026); *Wuilmer v. Noem*, No. 25-CV-3236 (NEB/JFD), 2026 WL 458457, at *3 (D. Minn. Feb. 18, 2026); *Villatoro v. Ripa*, No. 2:26-CV-00213-SPC-DNF, 2026 WL 452432, at *1 (M.D. Fla. Feb. 18, 2026).

II.     The Government's Detention of Petitioner Violates His Fifth Amendment Rights

The Court finds that Petitioner's continued detention violates his Fifth Amendment rights. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *Garcia Domingo v. Castro*, 806 F. Supp. 1246, 1251–52 (D.N.M. Oct. 15, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."

3

*Reno v. Flores*, 507 U.S. 292, 306 (1993).  Though the Government "may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings," that "limited period" cannot be indefinite.  *Demore v. Kim*, 538 U.S. 510, 527 (2003).  As the length of detention stretches on, an individual's due process interests escalate and the government's burden to justify continued detention mounts.  *Id*. at 529; *Jennings*, 583 U.S. at 310–11; *Mohamed v. Sec'y Dep't of Homeland Sec.*, 376 F. Supp. 3d 950, 957 (D. Minn. 2018).

The Government has offered neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest.  While the Court recognizes that neither authorized release nor length of residency constitutes legal authorization to remain in the country, any revocation of the protected interests arising from these circumstances must still comport with constitutional procedural safeguards.

The United States' power to admit or exclude aliens is no longer plenary once an alien enters the country, because the Due Process Clause applies to "all persons."  *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("Once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly.").  Petitioner possesses a protected liberty interest in remaining free from detention and was deprived of that interest without constitutionally adequate process.

The Government concedes that the material facts of this case are similar from those in *Martin Ramirez v. Noem*, No. 2:26-cv-00063-SMD-GJF, 2026 WL 381869, at *7 (D.N.M. Feb. 11, 2026).  *See* Doc. 6 at 3.  Furthermore, the Government acknowledges that *Martin Ramirez* controls the outcome here should the Court adhere to that precedent.  *See id.* at 4.  Because Respondents have offered no independent legal basis for continued custody, Petitioner is entitled

to relief pursuant to § 2241. *See Martin Ramirez*, 2026 WL 381869; *Cortez-Gonzalez*, 2025 WL 3485771, at *3.

III.     Release, Not Remand, Is the Proper Remedy

Respondents argue that if the Court determines § 1226 controls, the proper remedy is to reclassify Petitioner under that statute, which provides for individualized bond proceedings, rather than order release. *See* Doc. 6 at 4. Although Respondents concede that a bond hearing is an acceptable remedy, they maintain that immediate release is unwarranted because it would improperly circumvent the Immigration Court. *Id.* Instead, Respondents suggest the appropriate relief is an order granting classification under § 1226 and remanding the case to the Immigration Court. *Id.* at 5.

Respondents' proposed remedy does not adequately address the circumstances of this case. First, federal district courts have broad equitable powers in ordering habeas relief. *See Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus*." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see also Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1106 (10th Cir. 2021). In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243.

Second, since Petitioner's detention under § 1225(b)(2)(A) is void *ab initio*, immediate release is the appropriate remedy to address this deprivation of liberty and restore him to the *status quo ante*. *See Hernandez v. Ladwig*, No. 2:26-CV-02081-SHL-ATC, 2026 WL 324020, at *8–9 (W.D. Tenn. Feb. 6, 2026). Respondents correctly point out that had Petitioner's initial detention accorded with due process, he would have been entitled to a bond hearing. *See* Doc. 6 at 5.

5

However, a bond hearing cannot retrospectively cure a due process violation stemming from detention without the statutorily required exercise of discretion. Under INA regulations, a bond hearing occurs only *after* Immigration and Customs Enforcement ("ICE") has made its "initial [discretionary] decision to detain"—it is not itself an initial custody determination but an act of "*re*-determination." *Tumba v. Francis*, 813 F. Supp. 3d 394, 406 (S.D.N.Y. 2025). Although immediate release cannot cure Petitioner's loss of liberty since August 16, 2025, it is a remedy that comes the closest to doing so, especially when compared to the inadequate procedural alternatives of remanding. *See* Doc. 1 at 6; *see also Yao v. Almodovar*, 813 F. Supp. 3d 461, 477 (S.D.N.Y. 2025).

Third, contrary to Respondents' argument, remanding this case would undermine, rather than preserve, executive branch proceedings. Remanding the case with instructions to treat it as a standard § 1226 matter would force the Immigration Court to act in contravention of its own agency's binding guidance. *See Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 505 (S.D.N.Y. 2025). Consequently, the Court orders Petitioner's release based strictly on a constitutional evaluation of the detention itself, a determination that sits squarely within this Court's jurisdiction and broad equitable powers. *See Burton*, 975 F.2d at 693.

## CONCLUSION

It is hereby **ORDERED**:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;

2) Respondents shall release Petitioner within 24 hours of the next business day following the entry of this Order;

3) Respondents shall facilitate Petitioner's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address;

4) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release.  This notice must specify: (1) the date, (2) the time, and (3) the manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements).  Additionally, the notice must include (4) a description or copies of all discharge and travel documents provided to Petitioner at the time of release;

5) Respondents **SHALL NOT** re-detain Petitioner without a pre-deprivation hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a);

6) Respondents **SHALL NOT** remove Petitioner to any third country to which he does not have a removal order without first providing him with constitutionally compliant procedures;

7) The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

**IT IS SO ORDERED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**